# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **CJ GRISHAM** <br> *Plaintiff,* | § <br> § <br> § | |
| **vs.** | § <br> § <br> § <br> § | **CIVIL ACTION NO.** <br><br> **6:25-cv-194** |
| **LARRY R. SMITH,** <br> In his personal, supervisory, and official capacity, <br> **MATTHEW LAZARINE,** <br> In his personal, supervisory, and official capacity, <br> **TIM JONES,** <br> In his personal, supervisory, and official capacity, <br> **ROBERT CARLSON,** <br> In his personal, supervisory, and official capacity, <br> **SERGEANT SAMUELS,** <br> In her personal, supervisory, and official capacity, and <br> **SMITH COUNTY, TEXAS,** <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |

---

## <u>COMPLAINT</u>

---

Plaintiff CJ Grisham (hereinafter "Mr. Grisham") brings this Complaint against Defendants Larry R. Smith (herein referred to as "Defendant Smith") in his personal, supervisory, and official capacities, Matthew Lazarine (herein referred to

as "Defendant Lazarine") in his personal, supervisory, and official capacities, Tim Jones (herein referred to as "Defendant Jones") in his personal, supervisory, and official capacities, Robert Carlson (herein referred to as "Defendant Carlson") in his personal, supervisory, and official capacities, Sergeant Samuels (herein referred to as "Defendant Samuels") in her personal, supervisory, and official capacities, and Smith County, Texas (herein referred to as "the County"), and in support thereof alleges the following upon information and belief:

## INTRODUCTION

*"It is ironic that in a democracy where all are free and enjoy equal rights, we must also have laws -- equal responsibilities -- so that the rights and freedom of others are protected. However, in a democracy, laws must also be fair, clearly defined, and applied equally to all members of the society -- both citizens and rulers."*
**-- Robert Alan Silverstein, American Writer, Artist, Social Activist**

Plaintiff is not a litigious man and, in fact, does everything possible to avoid litigation if at all possible.  He does because he recognizes that government is never accountable; the people are.  Government never pays for its mistakes. Rather, the People must twice suffer for the mistakes of its government agents: first, suffering from the wrong itself at the hands of those who feel themselves infallible and unaccountable while cloaked in the robes of government and, second, through taxation and takings to pay for the wrongs they wreak among society.

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States of America.

2. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff's claims for damages are authorized by 42 U.S.C. §§ 1983 and 1985.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Smith County, Texas.

## PLAINTIFF

5. Mr. Grisham is a citizen of Bell County who is a civil rights attorney and an honorably retired Senior Counterintelligence (CI) Special Agent with the United States Army.

6. Mr. Grisham served well over ten years in a law enforcement capacity investigating and enforcing Federal National Security Crimes such as treason, sedition, assassination, sabotage, terrorism, and espionage, among others.

7. Mr. Grisham handles both criminal and civil causes of action all over the State of Texas, including in Smith County.

8.  Mr. Grisham has a substantial interest in being free of harassment, retaliation, official oppression, violation of her civil rights, conspiracy to violate rights, and abuse of authority under color of law.

### DEFENDANTS

9.  Defendants, collectively, are government officials and entities.

10.  Defendants operate in their official, supervisory, and personal capacities in Smith County, Texas.

11.  Defendant Smith County ("the County") is a political subdivision organized under the authority of the Texas Constitution, Article IX, Section 1.

12.  Defendant Larry R. Smith ("Defendant Smith") is the County Sheriff and senior policy maker of the Smith County Sheriffs Office, and is being sued in his personal, supervisory, and official capacities.

13.  Defendant Matthew Lazarine ("Defendant Lazarine") is a Lieutenant in the Smith County Sheriffs Office who serves as the supervisor for court security, and is being sued in his personal and official capacities.

14.  Defendant Tim Jones ("Defendant Jones") is a senior officer in the Smith County Sheriffs Office, and is being sued in his personal, supervisory, and official capacities.

15. Defendant Robert Carlson ("Defendant Carlson") was a senior officer in the Smith County Sheriffs Office, and is being sued in his personal, supervisory, and official capacities. Defendant Carlson has retired since the actions contained in this lawsuit.

16. Defendant Sergeant Samuels ("Defendant Samuels") is a Sergeant in the Smith County Sheriffs Office, and is being sued in her personal, supervisory, and official capacities.

17. Defendants, as government officials and entities, are bound to the United States and Texas Constitutions, as well as Texas laws as passed by the Texas Legislature and signed into law by the Governor.

18. At all times relevant herein, Defendants acted in their personal, supervisory, and official capacities within Smith County, Texas.

19. Defendants, as government officials and entities, are not permitted to engage in actions that violate the United States and Texas Constitutions or laws.

## STATEMENT OF FACTS

20. Plaintiff is a civil rights and criminal defense attorney who takes cases all over the state for those whom are wrongfully accused of crimes by corrupt government officials.

21.  Plaintiff is a retired combat veteran and United States Army Senior Counterintelligence Special Agent, military occupational specialty (MOS) 35Y5M.

22.  Plaintiff is the founder of Open Carry Texas, a Texas-based gun rights organization that advocates for the Second Amendment-protected rights of Texans through both legislative and educational activism.

23.  In 2004, Congress passed the Law Enforcement Officers Safety Act (LEOSA) of 2004, which Amended the Federal criminal code to authorize a qualified law enforcement officer carrying photographic governmental agency identification to carry a concealed firearm, notwithstanding any State or local law.

24.  In 2010, Congress passed the "Law Enforcement Officer Safety Act Improvements Act" which was codified in 18 U.S.C. 926C.

25.  LEOSA is codified into 18 U.S.C. § 926C.  Under the law, qualified retired law enforcement officers are allowed to carry concealed firearms that have been shipped or transported in interstate or foreign commerce, subject to certain conditions and identification requirements. This does not supersede state laws prohibiting possession of firearms on private or government property.

26. Additionally, a "qualified retired law enforcement officer" must have served as a law enforcement officer for at least 10 years and qualify annually on firearms training that is similar to active law enforcement officers. Finally, the standard "prohibited persons" provisions federal law must be met to obtain a LEOSA ID and certification.

27. The law defines a "qualified retired law enforcement officer" as an individual who separated from service in good standing with a public agency.

28. Further, a law enforcement officer is defined as one who "was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest or apprehension under section 807(b) of title 10, United States Code (article 7(b) of the Uniform Code of Military Justice)."

29. Army Regulation 381-20, *The Army Counterintelligence Program*, Chapter 4-2, provides that Army CI has investigative jurisdiction over crimes such as treason, espionage and spying, subversion, sedition, sabotage directed by Foreign Intelligence Services, terrorism, and other areas.

30. CI special agents are authorized to apprehend any person subject to the Uniform Code of Military Justice (UCMJ), regardless of location, if there is

a reasonable belief that the person has committed a criminal offense under USAI investigative jurisdiction.

31.  CI special agents are also authorized to conduct investigative stops of any person subject to the UCMJ, regardless of location, if there is a reasonable suspicion that the person has committed a criminal offense under United States Army Intelligence (USAI) investigative jurisdiction.

32.  Department of Defense Instruction 5525-12 provides instructions to DOD commands for incorporating the provisions of 18 U.S.C. 926C.

33.  Army Directive 2021-06, states that Army counterintelligence agents who have been authorized the issuance of badges and credentials to conduct CI investigations are considered to be qualified law enforcement officers.



*Figure 1  Photograph of Agent Grisham's mounted Retired Badge and Credentials*

34.  When an Army CI special agent retires from the DOD, his credentials are retired and the agent has the option of having them mounted on a plaque as seen above.

35.  Article I, Section 23, of the Tex. Const. states that "Every citizen shall have the right to keep and bear arms in the lawful defense of himself or the State; but the Legislature shall have the power, by law, to regulate the wearing of arms, with a view to prevent crime." [1]

36.  Tex. Loc. Gov't. Code 236.002 clearly and unambiguously states that "a county may not adopt or enforce regulations that…relate to…the transfer, possession, wearing, carrying, ownership, storage, transportation, licensing, or registration of firearms."

37.  Furthermore, this section makes clear that "an ordinance, rule, resolution, or policy adopted or enforced by a county, or an official action, including in any legislative, police power, or proprietary capacity, taken by an employee or agent of a county in violation of this section is void."[2]

38.  Tex. Penal Code 46.15 is a Texas statute titled "Nonapplicability."

39.  The statute states that Tex. Penal Code §§ 46.02 and 46.03 "do not apply" to retired peace officers.

---

[1] Tex. Const., Art. 1, Sec. 23.
[2] Tex. Loc. Gov't Code 236.002(b).

40.  Under Tex. Pen. Code 46.16(a)(5), the government buildings and property where possession of firearms is prohibited under Tex. Pen. Code § 46.03 do not apply to "an honorably retired peace officer or other qualified retired law enforcement officer, as defined by 18 U.S.C. Section 926C, who holds a certificate of proficiency issued under Section 1701.357, Occupations Code, and is carrying a photo identification that is issued by a federal, state, or local law enforcement agency, as applicable, and that verifies that the officer is an honorably retired peace officer or other qualified retired law enforcement officer…"

41.  Courthouses in Texas are considered places where weapons are prohibited, but the Texas Legislature has determined that certain individuals who meet certain criteria may carry into such places:

   a.  peace officers or special investigators;[3]

   b.  parole officers;[4]

   c.  community supervision and corrections department officers;[5]

   d.  an active or retired judicial officer;[6]

---

[3] Tex. Penal Code § 4615(a)(1).
[4] Tex. Penal Code § 4615(a)(2).
[5] Tex. Penal Code § 4615(a)(3).
[6] Tex. Penal Code § 4615(a)(4).

e.  an honorably retired peace officer or other qualified retired law enforcement officer;[7]

f.  the attorney general or a United States attorney, district attorney, criminal district attorney, county attorney, or municipal attorney;[8]

g.  an assistant United States attorney, assistant attorney general, assistant district attorney, assistant criminal district attorney, or assistant county attorney;[9]

h.  a bailiff designated by an active judicial officer;[10]

i.  a juvenile probation officer;[11]

j.  a person who retired after serving as a judge or justice;[12] and

k.  a district or county clerk.[13]

42.  On March 28, 2025, Plaintiff arrived at the Smith County Courthouse to attend an In Re hearing for a client.

43.  Upon arrival at the Smith County Courthouse at approximately 0840 hours, Plaintiff placed his items on the conveyor belt, presented his retired LEOSA credentials and current TCOLE weapon qualification certification to armed

---

[7] Tex. Penal Code § 4615(a)(5).
[8] Tex. Penal Code § 4615(a)(6).
[9] Tex. Penal Code § 4615(a)(7).
[10] Tex. Penal Code § 4615(a)(8).
[11] Tex. Penal Code § 4615(a)(9).
[12] Tex. Penal Code § 4615(a)(10).
[13] Tex. Penal Code § 4615(a)(11).

Smith County Sheriffs Office Deputy T Loftis, and announced that he was

legally carrying a concealed handgun.



*Plaintiff Grisham's LEOSA card and Tex. Comm. On Law Enforcement Certification*

44.  Deputy Loftis' demeanor immediately changed to a confrontational tone,

and informed Plaintiff that Plaintiff would not be permitted to have a

handgun in the courthouse.

45.  When Plaintiff asked to speak to a supervisor, Dep. Loftis pointed to

Sergeant Samuels who did nothing to ensure that her subordinates at the

security station obeyed the law and refrained from assaulting plaintiff and

violating his rights as codified under state and federal laws.

46.  When Sergeant Samuels refused to follow the law and, in fact, legitimized Deputy Loftis' refusal to follow the law by telling Plaintiff she would not allow him to carry his handgun in the building, Plaintiff asked to speak to Defendant Samuel's supervisor.

47.  Plaintiff repeatedly asked what law Defendants and Smith County Deputies were enforcing, and not a single one of the deputies quoted any law that they were enforcing.

48.  Plainitff explained to Sergeant Samuels that he was not prohibited from carrying under the same Texas law that allowed her to carry into the building.

49.  Dep. Loftis refused to allow Plaintiff to proceed through the security checkpoint to the hearing he was ordered to appear at on behalf of his client.

50.  When Plaintiff moved out of the way because a deputy was getting behind him, Deputy Loftis physically assaulted Plaintiff by using his body to push Plaintiff out of the building

51.  Deputy Loftis, while assaulting Plaintiff, told Plaintiff that he was "violating the rules".

52.  When Plaintiff attempted to legally re-enter the building, Dep. Loftis, in plain view of Defendant Samuels told Plaintiff that "you're not going back into that courthouse with that firearm on your side."

53.  Plaintiff informed Loftis that he was violating the law by quoting the exact statute, to which Dep. Loftis matter of factly stated, "I'm not violating no law [sic]" while in the presence of Defendant Samuels.

54.  Approximately five minutes into the deputies delaying Plaintiff from attending his hearing, Defendant Lazarine came outside to where Plaintiff had been pushed.

55.  Plaintiff immediately gave Defendant Lazarine his DOD-issued "QUALIFIED DOD Law Enforcement Officer" 926C credentials and current TCOLE "Retired Officer Firearms Proficiency" card.

56.  Both of these documents clearly placed the Defendants Samuels and Lazarine on notice that Plainitff was a Qualified DOD Law Enforcement Officer.

57.  The documents had clearly visible watermarks and holographic symbols to identify them as official government-issued documents.

58.  Approximately one minute after Defendant Lazarine made contact, two plain clothes gentlemen, Defendants Jones and Carlson, with what appeared to badges and firearms exited the building that was clearly marked with a sign that said no firearms.

59.  Plaintiff identified myself to the first individual and shook his hand.  He identified himself as "Tim Jones," clearly a higher level supervisor, though

he did not identify his authority or role to me at any time nor the reason for his presence.

60.  Mr. Jones came out with another individual who did not identify himself but who was also carrying what appeared to be a badge and firearm.  That individual was later identified as Defendant Carlson.

61.  Defendant Carlson was handed Plaintiff's 926C credentials who inspected them and was clearly able to see that they identified me as a "QUALIFIED DOD Law Enforcement Officer."

62.  Defendant Carlson handed Plaintiff's TCOLE "Retired Officer Firearms Proficiency" card to Defendant Lazarine and ordered him to "call TCOLE on that."

63.  Defendants Carlson, Lazarine, and Jones then each entered the building with their visibly holstered firearms past the sign that said no firearms were permitted in the building.

64.  Approximately two and a half minutes after walking inside the building with his firearm, Defendant Carlson came out, handed Plaintiff his LEOSA credentials, and said "you're not bringing your gun in, but have a good day."

65.  When Plaintiff asked why he can't bring a gun in, Defendant Carlson responded, "because you're not a peace officer."

66.  Plaintiff explained that "I'm exempt just like you are," to which Defendant
Carlson replied, "no, you're not."

67.  Plaintiff asked Defendant Carlson if he had read Tex. Penal Code
46.15(a)(5).  He did not respond, but Defendant Jones said, "we have
security here, you are not coming in here with a gun."

68.  Defendant Lazarine then accused Plaintiff of "impersonating a peace
officer."

69.  Defendant Carlson got in Plaintiff's face, pointed at him, and said, "you're
not bringing a gun in; see ya," then walked into the same building with a gun
that he told Plaintiff was not allowed in the building.

70.  When Plaintiff quoted the law to Defendant Carlson, he waved his hand
dismissively at Plainitff, condescendingly told Plaintiff "bye," then entered
the building with his gun.

71.  As he was walking in, Defendant Carlson turned to Plaintiff and said, "if
you bring that gun back in here, you're going to jail."

72.  Plainitff asked Defendant Carlson for what crime he would be arrested.
"For impersonating a peace officer," was Defendant Carlson's response.

73.  Defendant Lazarine said that the TCOLE Retired Officer Firearms
Proficiency certification card was "only a firearm qualification card

74. Plaintiff was forced under threat of arrest to take his firearm to his vehicle where it was susceptible to being stolen before being allowed back into the building to conduct his business.

75. After his court hearing, Plainitff called TCOLE and spoke to both the LEOSA and Enforcement Divisions since Defendants Lazarine and Carlson allegedly spoke to them and concluded that Plaintiff was not a law enforcement officer.

76. The LEOSA Division stated that no one had called them and the Enforcement Division told Plainitff just to have the deputies call them and they'll confirm Plaintiff's status.

77. Plaintiff then called Defendant Lazarine and asked to whom he spoke with at TCOLE.

78. Defendant Lazarine responded, "CJ, I'm not telling you about anything."

79. Plaintiff informed Defendant Lazarine that all he had to do was call TCOLE enforcement and that they would tell him Plaintiff was a certified, retired peace office.

80. Defendant Lazarine responded, "I don't have to answer your questions just like you don't have to answer my questions."

81. Plaintiff then asked if Defendant Lazarine was going to call TCOLE enforcement.

82.  Defendant Lazarine said, "I'm not going to answer any of your questions. Is there anything else I can do for you, Mr. Grisham…I'm not going to call TCOLE Enforcement and I'm hanging up the phone."

83.  Defendant Lazarine then hung up the phone.

84.  When Plaintiff opened his Penal Code book and began reading Tex. Penal Code § 46.15 aloud to Defendants in the public hall, one of the Deputies asked if he could arrest Plaintiff for "disorderly conduct" or "creating a disturbance."

85.  This attitude is indicative of a policy, procedure, or culture of suppressing the speech and rights of anyone who has the audacity to stand up for the rule of law against the lawbreakers of Smith County government.

86.  On May 20, 2025, Plaintiff arrived at the Smith County Courthouse and requested to speak with Defendant Lazarine, who was head of security.

87.  Plaintiff again presented his retired law enforcement credentials to Defendant Lazarine.

88.  Plaintiff asked Defendant Lazarine if anything had changed and whether he was going to enforce the law to allow him to bring his concealed handgun into the building.

89.  Defendant Lazarine responded that "we're still enforcing the rule."

90.  Plaintiff reiterated that he was not asking about any rules, but whether he was going to enforce the law.

91.  Plaintiff asked Defendant Lazarine, are you saying that "no, I cannot bring my firearm in here" to which Defendant Lazarine responded, "that's correct."

92.  Plaintiff, under threat of arrest, took his firearm to his vehicle where it was susceptible to being stolen before being allowed back into the building to conduct his business.

93.  On May 22, 2025, Plaintiff arrived at the Smith County Courthouse and Defendant Jones was standing outside the office near security.

94.  Plaintiff asked Defendant Jones if he "was following the law yes...on retired law enforcement carrying in."

95.  Defendant Jones told Plaintiff that "you can't bring it in here."

96.  When Plaintiff asked Defendant Jones "why not," Defendant Jones responded "because it's against policy."

97.  Defendant Jones said a retired peace officer with 926C credentials and TCOLE certification was "not legal [to carry] in here."

98.  Plaintiff reminded Defendant Jones that "policy does not trump the law, right?" to which Defendant Jones flatly told him, "sir, you're not bringing it

in. You're welcome to take it out to your car and then you're welcome to come in."

99.  This discussion was had in the presence of Defendant Samuels who was filming the discussion between Plaintiff and Defendant Jones, but did not intervene to enforce the law and prevent Plaintiff's rights from being violated.

100.    Defendants believe that policy Trumps law.

101.    Under Tex. Penal Code § 46.15, lawyers and other individuals are not exempt from having a firearm in a courthouse, even if they are employees who work in the courthouse.

102.    Defendant Smith and Defendant County have and enforce a policy that allows certain public defenders to bypass security without being checked for firearms.

103.    Defendant Smith and Defendant County have and enforce a policy that discriminates against unfavored individuals whom the Texas Legislature has specifically exempted by refusing to allow them to exercise their right to self-defense.

104.    Plaintiff has personally seen numerous local attorneys and plain clothed officers who have bypassed security with their firearms.

105.    On March 28, 2025, Plaintiff sent a letter to Defendants Smith and County notifying them that they were breaking the law by undermining state law and enforcing a policy that directly violates the Texas Penal Code.

106.    Defendants never responded to the letter by the deadline given of April 28, 2025, to prevent this lawsuit.

107.    Article XI, Section 5(a) of the Texas Constitution explicitly states that no charter or ordinance of a political subdivision may contain provisions inconsistent with the state constitution or general laws enacted by the legislature.

108.    Similarly, several state laws specifically preempt any local ordinances, policies, or rules that conflict with state law regarding firearms, underscoring the supremacy of legislative enactments over local regulations.[14]

109.    All Defendants were properly noticed of their illegal actions and consciously and maliciously chose to disregard the warnings present to them.

110.    Plaintiff informed Defendants that he would agree to placing his handgun in a lockbox while he was conducting business in the courthouse so that he was not forced to leave a firearm unattended in his vehicle –

---

[14] See e.g. Tex. Loc. Gov't. Code § 229.001 and Tex. Loc. Gov't. Code § 236.002.

something he's not required to do under the law as explained above – but

Defendants have refused to make accommodations to meet halfway.

## FIRST CLAIM FOR RELIEF
### Violation of Second Amendment Rights
### (against all defendants)

111.    Plaintiffs repeat and realleges the allegations set forth in paragraphs

1 through 107 as if fully set forth herein.

112.    Defendants acted under color of state law.

113.    Defendants Smith, Lazarine, Carlson, Jones, and Samuels were

acting in their official and supervisory capacities as Texas Peace Officers

during the events described in this complaint.

114.    Defendants were also acting in their personal capacities during the

events described in this complaint.

115.    Other citizens were treated differently than Plaintiff by allowing

them to bypass security based on nothing more than familiarity or being

employees in the building despite security being set up to specifically detect

for the presence of firearms.

116.    Defendants deprived Plaintiffs of rights secured by the Constitution

or laws of the United States and of the State of Texas.

117.    Defendants repeatedly discriminated against Plaintiff's right to carry

as codified in law by the Texas legislature.

118.     Defendants intimidated Plaintiff by surrounding him with officers and threatening him with arrest for trying to lawfully carry where he was legally allowed.

119.     Defendants' actions violated Plaintiffs' clearly established Second Amendment rights to carry and 5th Amendment right to equal protection under the laws.

120.     As a direct and proximate cause of Defendants' actions, Plaintiff's rights were violated, and he suffered damages to his liberty and freedom of movement.

## SECOND CLAIM FOR RELIEF
## (FAILURE TO SUPERVISE, 18 U.S.C. 1983)

121.     Plaintiffs repeat and realleges the allegations set forth in paragraphs 1 through 119 as if fully set forth herein.

122.     Defendants acted under color of state law.

123.     Defendants Smith, Lazarine, Carlson, Jones, and Samuels were acting in their official and supervisory capacities as Texas Peace Officers during the events described in this complaint.

124.     Defendants were also acting in their personal capacities during the events described in this complaint.

125.     Defendants Smith, Lazarine, Jones, Carlson, and Samuels were supervisors within the Smith County Sheriff's Office.

126.    Defendant Smith, as the Smith County Sheriff, is the highest-ranking law enforcement official in the county and is responsible for the supervision and training of all deputies and officers within the Sheriff's Office.

127.    Defendant Lazarine, as a Lieutenant in the Smith County Sheriff's Office, is responsible for the direct supervision of deputies under his command as the head of courthouse security.

128.    Defendant Samuels, as the supervisor in charge at the screening station, is responsible for the direct supervision of deputies under her command.

129.    Defendants Smith, Lazarine, Jones, Carlson, and Samuels acted under color of state law in their capacities as law enforcement officials.

130.    At all relevant times, Defendants Smith, Lazarine, Jones, Carlson, and Samuels were acting in their official capacities as employees of Smith County, Texas.

131.    Defendants Smith, Lazarine, Jones, Carlson, and Samuels failed to adequately supervise their subordinates regarding Texas gun laws with respect to exemptions to carry for retired peace officers.

132.    In fact, Defendants Smith, Lazarine, Jones, Carlson, and Samuels showed poor leadership in themselves stating that policy trumps law in view of their subordinates, setting a culture of lawlessness among deputies.

133.     Defendants Smith, Lazarine, Jones, Carlson, and Samuels failed to adequately supervise their subordinates because they themselves have a disdain for enforcing the law when it comes to outsiders.

134.     This failure to supervise caused the deprivation of Plaintiff's rights during multiple Smith County courthouse appearances and continues to this day.

135.     Specifically, Plaintiff was repeatedly prevented from lawfully carrying a concealed handgun in a manner enjoyed by other entities exempt under that same statute because he is not from Smith County while others were permitted to engage in the same conduct.

136.     Defendants' Smith, Lazarine, Jones, Carlson, and Samuels failure to supervise amounts to deliberate indifference to the rights of persons with whom their subordinates come into contact.

### THIRD CLAIM FOR RELIEF
### (Ninth Amendment,
### UNEMUERATED RIGHTS, 18 U.S.C. 1983)

137.     Plaintiffs repeat and realleges the allegations set forth in paragraphs 1 through 136 as if fully set forth herein.

138.     Defendants acted under color of state law.

139.    Defendants Smith, Lazarine, Jones, Carlson, and Samuels were acting in their official capacities as county officials during the events described in this complaint.

140.    Defendants were also acting in their personal capacities during the events described in this complaint.

141.    Plaintiff has a liberty interest in being treated equally to others in similarly situated circumstances.

142.    The Constitution guarantees certain fundamental rights not specifically enumerated.  Plaintiff's right to engage in lawful, peaceful conduct and defense of his client as attorney of record without harassment is part of these protected liberties.

143.    Plaintiff has a right to be treated with respect as an out of town attorney even though he does not enjoy the familiarity which other local attorneys enjoy.

144.    As a direct and proximate cause of Defendants' actions, Plaintiff's right to be treated with dignity and respect as an officer of the court and a retired peace officer was violated.

**FOURTH CLAIM FOR RELIEF**
**(Conspiracy to Violate Rights,**
**18 U.S.C. 1985)**

145.    Plaintiffs repeat and realleges the allegations set forth in paragraphs 1 through 144 as if fully set forth herein.

146.    Defendants acted under color of state law.

147.    Defendants Smith, Lazarine, Jones, Carlson, and Samuels acted in their official capacities as county officials during the events described in this complaint.

148.    Defendants were also acting in their personal capacities during the events described in this complaint.

149.    Defendants conspired to violate Plaintiffs' rights incorporated in the previous paragraphs by working together to threaten Plaintiff with arrest if he did not leave his lawfully possessed firearm in his unattended vehicle.

150.    Defendants conspired with each other to pass and enforce the unlawful policy.

151.    Defendants to violate Plaintiff's rights and threatened to have him arrested for engaging in constitutionally and legally protected activities.

152.    As a direct and proximate cause of Defendants' actions, Plaintiff's rights were violated and they suffered damages to their constitutionally protected rights.

### *MONELL* LIABILITY

153.    Defendant County created, validated, enforced, and supported a written and unwritten policy, procedure, and custom that directly violated Texas state law.

154.    Defendants' enforcement actions demonstrate a policy, practice, or custom to retaliate against Plaintiff for engaging in his protected activities.

155.    Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprived Plaintiff of his right to be free from retaliation for protected conduct.

156.    At all relevant times, Plaintiff had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to be free of unlawful seizures.

157.    At all relevant times, Plaintiff enjoyed the protection of plainly written laws that laid out his exact non-applicability to laws prohibiting him from carrying into a government building.

158.    Defendant County was aware of the other Defendants' retaliatory conduct and did nothing to prevent it.  Defendant County showed a deliberate indifference to the constitutional and legal rights of Plaintiffs.

159.    Defendant County showed a deliberate indifference and ratified Defendants' conduct.

160.    As a direct and proximate result of Defendant County's unlawful actions, Plaintiff was harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Court:

A)  A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that allow for warrantless searches, retaliatory detentions, negligent training that allow for retaliation against him and others similarly situated for exercising his Constitutional and legal rights, violate the United States Constitution;

B) Injunctive relief barring Defendants' conduct in the future and from maintaining their policies, practices, and custom of warrantless seizures, retaliatory actions, and negligent training that allow for retaliation against citizens for exercising their Constitutional rights, which is in violation of 42 U.S.C. §§ 1983 and 1985;

C) Nominal Damages for retaliation, prior restraint, and violations of his constitutionally protected rights by Defendants for Plaintiff's exercise of his constitutionally protected rights, as the Court finds appropriate, from one or more Defendants;

D) Punitive Damages from one or more Defendants in the amount of $100,000;

E) Pre-judgment and post-judgment interest from one or more Defendants; and

F) Any such other relief as appears just and proper.




Respectfully submitted,

LAW OFFICES OF CJ GRISHAM,
PLLC


CJ Grisham
Texas State Bar no. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
P:  254-405-1726

*Pro Se*